CITY OF NEW BEDFORD vs. INHABITANTS OF TAUNTON.

The admission of overseers of the poor, in a binding-out indenture, that a certain pauper is chargeable to their town, and their acts in paying bills to other towns for his support, are not admissible in evidence against the town, in a litigation growing out of subsequent acts, for the purpose of showing that he and his descendants have their settlement therein. In performing these duties, they act as public officers, and not as agents of the town.

CONTRACT brought to recover for moneys expended in the support of Elizabeth Kinney and her four minor children, as paupers.

At the trial in the superior court, before *Morton*, J., evidence was admitted, under objection, of the acts of former overseers of the poor of Taunton, which are sufficiently recited in the opinion, for the purpose of showing an admission, by which the defendants were bound, that the settlement of the paupers was in Taunton. A verdict was rendered for the plaintiffs, and the case was reported for the determination of this court upon so much of the evidence as should be found to be competent.

*C. I. Reed*, for the defendants, cited *Brewster* v. *Harwich*, 4 Mass. 278; *Norton* v. *Mansfield*, 16 Mass. 98; *Oakham* v. *Sutton*, 13 Met. 192; *Dartmouth* v. *Lakeville*, 7 Allen, 284; *Peterborough* v. *Lancaster*, 14 N. H. 390; *King* v. *Chatham*, 8 East, 498.

*E. Williams*, (*W. W. Crapo* with him,) for the plaintiffs. If overseers of the poor, upon due notice that another town is supporting a pauper alleged to be chargeable to their town, pay for such support, such payment is competent evidence against their town to show that the pauper had his settlement therein. *Hopkinton* v. *Springfield*, 12 N. H. 328. *Pittsfield* v. *Barnstead*, 40 N. H. 495. *Harpswell* v. *Phipsburg*, 29 Maine, 313. So also is their recital in a solemn instrument executed in the performance of their duties, admitting the fact. Such acts are not casually or gratuitously done. They are done deliberately and after investigation.

CHAPMAN, J. The plaintiffs seek to recover of the defendants compensation for the support of Elizabeth Kinney and her four minor children, alleging that they are paupers and have their settlement in Taunton. Elizabeth is the illegitimate daughter of the wife of John Smith. It appears that Smith and his wife

separated; that the wife afterwards lived with Benjamin Ellis as his wife, and by her illegal cohabitation with him had three illegitimate children, namely, Elizabeth, the pauper, and two boys named Benjamin and George W. The plaintiffs attempted to prove, in addition to these facts, that the settlement of John Smith was in Taunton, from which it would follow that the settlement of his wife and her illegitimate children subsequently born was there also.

As evidence tending to prove the settlement of Smith in Taunton, the plaintiffs were permitted to show that in the year 1818 the selectmen of Taunton, who were also overseers of the poor, bound out his son William to Micah Reynolds, under the statute authorizing overseers of the poor to bind out the children of paupers. The indenture recites that the apprentice is a poor child, son of John Smith of Taunton, who is lawfully settled in and become chargeable to said town, and it appears to have been made in pursuance of the general provisions of the statute. It is contended that this recital is an admission by the authorized agents of the town that John Smith had his settlement there. The question then arises whether overseers of the poor act as agents of towns in binding out the children of paupers, or as officers of the law, elected indeed by the towns, but in obedience to general laws, to perform certain public services, and performing these services independently of any votes of the town, or any authority or control of the town, and simply as such officers. The latter view is expressed by Shaw, C. J. in respect to some of the acts of the overseers of the poor, in *Oakham* v. *Sutton,* 13 Met. 192. He says: " If the town was bound, it was by the doings of the overseers as officers vested by law with power to bind the town by acts done in pursuance of their authority and duty. Such acts need no ratification by the town to make them binding on the town." Again he says : " If overseers who are bound by law to afford immediate relief to actual want and who must act upon the evidence before them, are sometimes deceived by appearances, still their acts, done in good faith must be deemed acts binding on the town."

The same doctrine has been held in respect to other town

officers. In *Monson* v. *Chester*, 22 Pick. 385, it was held that the assessors in the assessment of taxes act as public officers, and not as agents of the town ; having the law for their guide, and not the will of their constituents ; and therefore, in a question of settlement, the town was permitted to take advantage of their neglect to assess a person who was liable to assessment. Again, in *Berlin* v. *Bolton*, 10 Met. 115, it was held that assessors are not agents of a town, and that a town is not estopped by their illegal acts. In *Hafford* v. *New Bedford*, 16 Gray,     , this doctrine was applied to the members of the fire department. In *Walcott* v. *Swampscott*, 1 Allen, 101, it was applied to surveyors of highways, and servants employed by them in repairing ways. In *Buttrick* v. *Lowell*, 1 Allen, 172, it was applied to a police officer. Also in *Kimball* v. *Boston*, 1 Allen, 417. In *Griggs* v. *Foote*, 4 Allen, 195, it was applied to the officers of the city government authorized to lay out streets. In *Child* v. *Boston*, 4 Allen, 41, to the board of aldermen in locating drains ; and in *Rossire* v. *Boston*, 4 Allen, 57, to the assessors and collector of taxes.

Officers thus elected for the purpose of discharging public duties, prescribed by statute, and not dictated or controlled by the inhabitants of the town, constitute a part of the internal government of the Commonwealth. This consideration applies to the binding out of the children of paupers. The inhabitants can neither direct nor forbid nor intermeddle with it. They are not parties to the indenture, or to any of its recitals. But the overseers act independently of them and as public officers, discharging a public duty prescribed and regulated exclusively by statute provisions. When one has power to do an act not only without authority from the town, but against the will of the inhabitants, he cannot be regarded as their agent, nor can they be regarded as his principals in such act. The recital cannot then be regarded as the admission of the inhabitants, made by their agents, nor the indenture as the act of the inhabitants ; and it cannot within any legal rules be received as their admission.

The acts of the overseers in determining that the defendants should pay to the towns of Plymouth and Bridgewater their

bills for the support of Benjamin Ellis, Jr., and that he and his mother should be supported in the almshouse at Taunton, and that the bills for her support should be paid to the city of New Bedford, are of the same character, and such acts are so treated in the case of *Oakham* v. *Sutton.* The overseers exercise their discretion upon the evidence before them, and the town is bound by their acts as officers of the law having power by statute to bind them as to those particular matters; but the inhabitants are not the actors through the overseers as their agents; and as such determinations are made without any hearing of parties interested, their binding force should be limited to the particular transaction.

In respect to the settlement of paupers, there are no equitable considerations out of which presumptions will arise in favor of either party. The legislature has exercised its discretion in the establishment of a system of positive rules, and courts of law must assume that this discretion has been wisely exercised, and must enforce the system by giving to the statutes a fair inter-pretation. They will take it for granted that whenever the burden of supporting any particular pauper is thrown by statute and by legal evidence upon any particular town or city, it is right and equitable that it should be so. This is the view taken of these statutes in *Berlin* v. *Bolton,* 10 Met. 115, where it is said that the obligations of towns to support paupers result from provisions of positive law; that towns must be brought strictly within them, and that analogy, equitable construction and approximation, are all insufficient. The cases of *Shrews-bury* v. *Salem,* 19 Pick. 389, *Middleborough* v. *Plympton,* Ib. 489, *Robbins* v. *Townsend,* 20 Pick. 345, and many other cases, have been governed by this strict rule. In *Southborough* v. *Marlborough,* 24 Pick. 166, it is said that it is more important that the rule should be fixed and known, than what it is.

It is not necessary to decide, nor is it here decided, that none of the acts which overseers of the poor may do officially are done as agents of the town. In *Boston* v. *Weymouth,* 4 Cush. 542, it is said that the selectmen are the agents of the town in keeping their accounts with their treasurer. Yet the

selectmen are public officers, and do many things as such, which cannot be regarded as the acts of the town, done through them as agents. So in *Belfast* v. *Leominster*, 1 Pick. 123, it was held that the promise of the overseers to pay the plaintiffs the expense of supporting a pauper was the promise of the town, made by them as agents; and that an action could be maintained against the town upon it. Arrangements for making payment are in their nature acts of the town, done in conformity with the decision of the overseers, the decision being first made by authority of law, and not by authority of the inhabitants. See also *Dartmouth* v. *Lakeville*, 7 Allen, 284. There may be other acts of the overseers, such as we have now no occasion to consider, that may be held to be acts of agency for the town. It is not necessary now to state the line of distinction between these two classes of acts.

The verdict is to be set aside and a new trial to be had.*

* The case of INHABITANTS OF DARTMOUTH *vs.* INHABITANTS OF LAKE-VILLE was tried again in the superior court, before *Lord*, J., after the decision reported in 7 Allen, 284, and evidence on the part of the plaintiffs was admitted, under objection, of the acts of the overseers of the poor of Middleborough (of which town Lakeville was formerly a part) in 1826, for the purpose of showing an admission by them that Lydia Niles, an ancestor of the pauper whose settlement was in controversy, was then chargeable to that town. The jury returned a verdict for the plaintiffs, and the defendants alleged exceptions.

*E. L. Barney*, for the defendants.

*T. M. Stetson*, for the plaintiffs.

CHAPMAN, J. For the reasons stated in the opinion in the case of *New Bedford* v. *Taunton*, the act of the overseers of the poor of the town of Middleborough in providing for the support of Lydia Niles was done by them as public officers, and though the act was binding on the inhabitants, it is not to be regarded as an admission made by them through their agents as to the settlement of the pauper. *Exceptions sustained.*